1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

| | |
|---|---|
| SHELAH PALMER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| MITRA-9 Brands LLC, | |
| Defendant. | |

Plaintiff Shelah Palmer ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Mitra-9 Brands LLC ("Defendant").

<u>**NATURE OF THE ACTION**</u>

1.     This is a civil class action lawsuit against Defendant for false, misleading, deceptive, and negligent sales practices regarding its kratom seltzers, powders, and shots (the "Products[1]").  Kratom is a dried leaf that is sold as a loose powder, packaged into capsules, or made into an extract.  However, what reasonable consumers do not know, and Defendant fails to disclose, is that the "active

---

[1] The Products include all Mitra-9 Kratom seltzers in their varying flavors, the kratom powder drink mixes in their varying flavors, and the kava kratom shots in their varying flavors.

CLASS ACTION COMPLAINT - 1

1
2
3
4
5
6
7
8
9
10
11
12
13

ingredients" in kratom are similar to opioids.  That is, kratom works on the exact same opioid receptors in the human brain as morphine and its analogs, has similar effects as such, and critically, has the same risk of physical addiction and dependency, with similar withdrawal symptoms.  When reasonable consumers think of opiates and opioids, they think of heroin, fentanyl, hydrocodone, oxycodone, and morphine; they do not expect that the "all natural" product bought at their local corner store operates like an opioid, with similar addiction and dependency risks. Kratom is perniciously addictive – on an entirely different level than caffeine or nicotine – and it has sunk its hooks into tens of thousands of unsuspecting consumers and caused them serious physical, psychological, and financial harm.  Defendant has intentionally and negligently failed to disclose these material facts anywhere on its labeling, packaging, or marketing materials, and it has violated warranty law and state consumer protection laws in the process.

14
15
16
17
18
19
20

2.    Defendant relies on its Products' innocuous packaging and the public's limited knowledge about kratom and its pharmacology to get users addicted, while reaping profits along the way.  Reasonable consumers do not expect the seltzers, pouches of kratom powder, and shots, which they can purchase at gas stations and corner stores, to contain a Product with the same addictive potential of morphine and its analogs.  Defendant relies on this ignorance and does nothing to correct it.  Such activity is outrageous and is in contravention of Washington law and public policy.

21
22
23
24
25
26
27

3.    Defendant and its officers have engaged in a systemic effort to peddle an addictive substance to unsuspecting and oftentimes vulnerable consumers. Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products, for: (i) violation of the Washington Consumer Protection Act: RCW Chapter 19.86 (ii) breach of implied warranty; (iii) unjust enrichment; (iv) fraud by omission; and (v) negligent misrepresentation.

28

CLASS ACTION COMPLAINT - 2

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

**PARTIES**

4.      Plaintiff Sheelah Palmer is a citizen and resident of Springdale, Washington.  He first purchased the Products in 2019, during which time he was a resident of Washington.  Plaintiff Palmer purchased the Products from smoke shops and gas stations in Washington.  Plaintiff Palmer did not believe the Products to be harmful and was not aware that the Products carried a potential risk of being addictive.  Plaintiff Palmer reviewed the Products' packaging before making his purchase and relied on Defendants' representations in deciding to purchase the Products.  A warning on the Products packaging would have corrected his belief, but there was none.  Several months after beginning to consume the Products, Plaintiff Palmer first experienced withdrawals when one day he tried to consume less of the Products and began experiencing withdrawal systems including cold sweats, extreme irritability, restless leg syndrome, and insomnia.  Plaintiff Palmer had never experienced anything like that before.  Had Plaintiff Palmer known that the Products were highly addictive, or posed a risk of addiction, by way of a warning on the Products' packaging, he would have never purchased them.

5.      Defendant Mitra-9 Brands LLC is a Florida limited liability company with its headquarters located in Fort Meyers, Florida.  Defendant markets, sells, and distributes the Products throughout the United States, including in Washington.  Defendant manufactured, marketed, and sold the Products at issue at all times during the relevant class period.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

1    7.    This Court has personal jurisdiction over the parties because Plaintiff

2    Palmer resides in Washington, is a citizen of Washington, and submits to the

3    jurisdiction of the Court, and because Defendant has, at all times relevant hereto,

4    systematically and continually conducted, and continues to conduct, business in this

5    District.  Defendant therefore has sufficient minimum contacts with this state,

6    including within this District, and/or intentionally availed itself of the benefits and

7    privileges of the Washington consumer market through the promotion, marketing,

8    and sale of its products to residents within this District and throughout this State.

9    Additionally, Defendant marketed and sold its kratom to Plaintiff in this District.

10    8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

11    regularly does business in this District and the same misrepresentations, omissions,

12    and injures giving rise to the claims alleged herein have occurred in this District

13    (e.g., the distribution and sale of Kratom to Plaintiff, and Plaintiff's subsequent

14    addiction to kratom).

## FACTUAL ALLEGATIONS

15

16    **A.    Background and Pharmacology of Kratom**

17    9.    "Kratom" refers to the substance derived from the leaves of a tropical

18    tree, *mitragyna speciosa* (the "kratom plant"), indigenous to Southeast Asia, where it

19    has been used in herbal medicine since the 19th Century.  Kratom's first reported use

20    in scientific literature was in 1836, when it was noted that Malays used kratom tree

21    leaves as a substitute for opium.  Historic use of the kratom plant was particularly

22    well-documented in Thailand, Indonesia, and Malaysia, where kratom remains

23    popular to this day.

24    10.    Kratom is the most widely used drug in Thailand.  This popularity does

25    not mean Thailand believes kratom is harmless.  To the contrary, Thailand

26    understands that kratom is dangerous, as demonstrated by its ban of the substance in

27

28

---

CLASS ACTION COMPLAINT - 4

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

1943.[2]  Kratom was also historically popular in Malaysia until it was banned in 1952 under the Poisons Act.

11.     Kratom's varying, dose-dependent, effects have historically been part of its appeal.  For instance, the earliest accounts of kratom characterize kratom use for both a stimulant effect during hard day-labor by chewing fresh kratom leaves, and also as an analgesic or for relaxation by brewing kratom into a tea.

12.     In the Western world, kratom is sold online and at herbal stores, gas stations, corner stores, smoke shops, and "head" shops where it is primarily marketed as an herbal medicine or natural supplement to use to "treat" a variety of ailments (e.g., pain, mental health, opioid withdrawal symptoms), and/or to obtain a "legal" or "natural" high.

13.     To create consumable kratom products, kratom plant leaves are harvested, dried, and crushed into a fine powder that is then packaged and sold in pouches, capsules, or liquid formulations.[3]

14.     The chemicals in the kratom plant which produce a psychoactive effect when ingested are called "alkaloids."  "Alkaloids" are a class of various naturally occurring organic chemical compounds.  The primary alkaloids in kratom leaves responsible for kratom's effects are mitragynine ("MG") and 7-hydroxymitragynine ("7-OH").

15.     MG and 7-OH produce a wide spectrum of effects because they interact with many different receptors in the brain.  Studies show that MG and 7-OH interact with alpha-2 adrenergic receptors (adrenaline), D2 dopamine receptors, and the

---

[2] In 1943, Thailand banned the possession, use, and propagation of kratom, and later banned all kratom sales, imports, exports, and consumption all together.  However, in 2021, Thailand decriminalized possession of kratom in response to a growing pressure on its justice system to fix the country's overcrowded prisons through liberalization of its drug laws.

[3] When kratom leaves are extracted into a liquid formulation, this is colloquially called a kratom "extract shot."

CLASS ACTION COMPLAINT - 5

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

serotonin receptors (5-HT2A and 5-HT2C), all of which contribute to kratom's mood-lifting and stimulant-like effects.

16.    Most crucially, MG and 7-OH interact with the mu-opioid receptor. The mu-opioid receptor produces the most addictive or habit-forming effects, such as euphoria and analgesia. For this reason, the mu-opioid receptor is known as "the gateway to addiction" because it is the receptor which all opioids interact with to produce the classic opioid high feelings of euphoria, sedation, and pain relief.

17.    MG and 7-OH cause a variety of pharmacological effects depending on their potency, resulting in a highly dose-dependent response to each kratom product. For example, a low dose (0.5 grams to 3 grams) is typically described as stimulating or energizing, whereas a high dose (3+ grams) is typically described as euphoric, sedating, and analgesic. Nonetheless, in sufficient doses, kratom's effects are substantially similar to those of opioids and other drugs.

18.    Accordingly, kratom is referred to as a "quasi-opiate" by health professionals because of its opioid-like characteristics. This concept that kratom is essentially an opioid is affirmed by several facts: first, as discussed above, kratom's effects are substantially similar to those of opioids; second, kratom alleviates opioid withdraw symptoms; and third, repeated use of kratom causes opioid withdrawal symptoms.

19.    Opioids are addictive not only because of the pleasurable effects that they produce, but also because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug. The tragedy of addiction is that users want to stop but cannot.

20.    All substances that act on the opioid receptors carry a high risk of addiction, and kratom is no exception. Addiction occurs when an opioid is ingested on a regular basis and, over time, the user develops a tolerance to the drug that requires the user to consume an increased dose of the drug to achieve the same

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

effects a lower dose previously had.  As these doses increase, the body becomes dependent on the drug to feel normal and function properly.  When the drug is suddenly taken away or the user tries to stop taking the drug, withdrawal occurs. Withdrawal symptoms cause the user to feel much worse than they did before they started taking the drug and can be extremely painful and intolerable to the user.

21.     Indeed, kratom withdrawal symptoms are very similar to those of traditional opioid withdrawal.  These symptoms include irritability, anxiety, difficulty concentrating, depression, sleep disturbance, including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise.

22.     Users typically start substances like kratom because of how good it makes them feel, but once addicted, they use kratom to avoid the pain and sickness of withdrawal.  Use is no longer is about getting high, but about not feeling "sick."

23.     Kratom users state that kratom addiction is unique in the way it sneaks up on them.  What is particularly insidious about kratom, they describe, is that because they are unaware of kratom's negative side effects and its addictive potential, when they begin to experience the negative symptoms attributable to addiction in the early stages of taking kratom products, they do not attribute it to the kratom.  Instead, kratom users then take more kratom believing the kratom companies' claims that kratom will help them feel better.

24.     Long-term kratom users further report experiencing depression, anxiety, anhedonia, and reduced sex drive due to their kratom use.

**B.     Kratom Use and Addiction in the United States**

25.     Kratom use in the United States has exploded over the past decade.  As of 2023, the American Kratom Association estimates that kratom is a 1.5 billion dollar a year industry, with 11-15 million annual users in the United States, up from 3-5 million users in 2016.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

26.    Kratom's popularity is attributed to several factors: first, kratom is marketed as a safe substitute for painkillers and so it appeals to consumers who falsely equate "natural" with "safe;" second, kratom has received media attention as a "nootropic" or "smart" drug because it is stimulating at low doses; third, kratom is widely available and unregulated within the United States; fourth, it produces a "pleasurable" high; and lastly, users are unaware of kratom's opioid-like characteristics, addiction, and withdrawal potential.

27.    However, kratom is still generally a relatively unknown substance to the average consumer, and most people have never heard of it.  Kratom sellers advertise that it is a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, an anti-anxiety supplement, and that it improves focus and gives users a boost of energy to get through the day.  These kratom companies universally reiterate these purported "benefits" of kratom consumption, without disclosing any of the corresponding harms of kratom use.

28.    Further, because kratom does not produce as extreme of a "high" as cocaine or heroin, it is easy for users to take kratom daily without realizing they are developing an addiction and harming themselves.  This makes kratom particularly insidious as addiction sneaks up on unsuspecting and uninformed users.

29.    As a result of kratom manufacturers, retailers, and advertisers failing to warn consumers of kratom's addictive potential, many kratom users find themselves blindsided when they stop taking kratom and find themselves facing severe withdrawal symptoms after having stopped using what they thought was a harmless supplement.  Further, because kratom is relatively unknown in the United States, there are not well-established recovery resources for addicted users to turn to for resources and aid.  Some kratom users turn to the Internet for support, and there are well-populated and very active Internet forum support groups for consumers struggling with, and recovering from, kratom addictions.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

1
2
3
4
5

30.     The reports from addicted kratom users are heart-wrenching. Consistent among these reports is a feeling of initial shock when users realized they had become unknowingly addicted to kratom, and how difficult it was to stop their kratom use. Below are several accounts from the "Quitting Kratom" forum on www.reddit.com, which has over 45,000 members as of October 2024:[4]

6
7
8
9
10
11

> One user wrote: "I've been on a 50gpd [grams per day] habit for about 4 years.  Like most people here, **I was in denial that the Kratom was causing my multitude of issues. How could it be the Kratom when everyone keeps telling me how great it is?**  I made myself believe that I had underlying issues that the Kratom was helping.  Spoiler: It wasn't.  **I slowly became a shell of the person I used to be. TRUE clinical depression symptoms with zero joy in my life.**  I started browsing this subreddit and reading everyone's stories and I related to every single one.  **Everyone had the same exact experience I had and at that moment I knew it was the Kratom causing my depression.**" (emphasis added).

12
13
14
15
16

> A gas station employee wrote: "I work at a gas station where we sell kratom such as powders, gold and silver pills and especially shots etc (you know which one I'm talking about) **it's just mind blowing to me how many people are practically addicted and how many customers literally scavenge their money to pay for their daily shot**.  Why are people so addicted especially to those shots."

17
18
19
20
21

> Another user solicited "extract horror stories" – one user responded: "Took 2-3 shots a day for almost 2 years.  How did it screw me up?  Let me count the ways.  Financially it was draining me, 100%!  **I would estimate 60% of my hair fell out.  My skin was grey.  My eyes were dark.  I became a hermit.**  No longer wanted to do anything, including self care or hygiene.  Just taking a shower was a chore I had to talk myself into the last few months.  I was disgusting and did not care at all.  **All I cared about was that I had enough K for tomorrow.**"

22
23
24
25
26
27

> In response to the same "extract horror stories" post, another user responded: "I used [kratom extract] pills and sometimes the shots for over 5 years.  I'm now 290 days clean from them.  **They were so hard to kick bc of how addicting they are.**  And you can just walk in the store and buy them.  I was spending $45 day on this stuff.  **I wasted tens of thousands of dollars on it and my life suffered.**  Lots of my hair fell out and it's only now starting to grow back some, I think most of it is gone for good.  I'm repairing my marriage and friendships.  Everything.  Stay away from this stuff."

28

---

[4] *See* https://www.reddit.com/r/quittingkratom.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

Another user responded: "Amen. This shit got hold of me as bad as anything else I've ever done... spent WAY more money on these fucking things than real honest to God hard drugs back in the day. **Anywhere from 6-10 of these things daily for... years. Let's call it 7 at an average of $18/pop = $126/day x 30 = $3780/month = about $45k/year.** How fucking embarrassing. I made $140,000 last year living in Georgia (pretty low cost of living) and pretty regularly get busted "borrowing" money from my 10 year old son. Fuck this; I'm not living like this anymore."

About 2 years ago, another user wrote: "I saw 'A Leaf of Faith' and got the impression that kratom was a generally friendly substance to use freely, never knowing how addictive it was, how much it was further numbing me beyond how alcohol already was, how it was slowly wiping out my sex drive, and likely contributing to my perpetual brain fog. … My second attempt [at quitting] was maybe another 7 or 8 months later. Kratom was making me pretty miserable. I was reading posts in this subreddit and I was finally aware of how addicted I was; feeling crappy, sluggish, and sorta spacey pretty much all the time."

About 2 years ago, another user wrote: "What a difficult journey it has been. I was a ~75 GPD [grams per day] user. **Quitting kratom was one of the hardest things I've had to do in my life.** I learned the hard way that kratom causes withdrawals on a work trip 3 years ago. I should have stopped then and there but I gave in because the RLS was so bad. … **Kratom withdrawal is seriously no joke so don't think you're the only one struggling so much.** I'm only a week free but after this experience I know for sure that I will never go back. Good luck everyone!" (emphasis added).

About 2 years ago, another user wrote a post titled *Kratom Is An Addictive Drug*. It said, in part: "It's been 23 hours since my last dose. **I just wanted to give my story hoping that it would help others see that they've been lied to, deceived and manipulated into thinking this plant is 'harmless and safe'.** As a matter of fact, reading the horror stories on this subreddit was the first step in my recovery... I started taking it almost 3 years ago after hearing about it on... well, Reddit. They touted it is a miracle plant that had all the benefits of an opioid with none of the side effects." (emphasis added).

About 19 months ago, another user wrote: "**I think the perfect word to describe Kratom addiction is 'insidious'.** Here is the definition – *'proceeding in a gradual, subtle way, but with harmful effects.'* I think this is why it takes so long to realize what is going on. There was never a rock bottom moment for me like there would be for other more conventional abused drugs. No overdose, no bad behavior, no

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

abusiveness to my family, no DWI, etc.. - It was just a lazy, slow descent into nothingness. I was living in a groundhogs day type of existence. Wake up, go to work, leave work, buy an extract shot or 2, have dinner, drink my shot, mindlessly look at my phone and/or watch TV.  Wake up and do it all over again." (italic emphasis in original, bold emphasis added).

About 12 months ago, another user wrote: "I started using k[ratom] when I had knee surgery Dec 2019 so 3 years.  **I didn't want to use pain killers because I got sober from alcohol 3/6/2018 and i felt the pain killers were going to make me relapse.**  I didn't know I would end up in a worst place as I am now." (emphasis added).

About 2 years ago, another user wrote: "Was in bed all day yesterday fighting withdrawals.  I used to even be an athlete - strong lean and fit, until I got on [kratom] shots and extracts.  Didn't even get high any more - just wanted to not feel bad."

About 4 years ago, another user wrote: "I researched kratom before using it and almost every site promoted that its harmless with healthy benefits, and that its withdrawals are like coffee for 3 days max. Information wasn't clear that kratom could become a negative addiction that takes months to recover" … "**I took something I thought was helping me for 1.5-2 years, not even knowing the downsides bc that information was so misleading. It fucked up my digestion, energy, mood, brain fog, anxiety, etc.  Fuck kratom, and fuck those who peddle it as a harmless cure-all**." (emphasis added)

About 10 months ago, another user wrote: "For any newcomers: this stuff is absolutely no joke.  It's not harmless and the wd [withdrawal] is *definitely* **not** like caffeine.  I've cold turkey'd caffeine before and I had a slight headache for a couple hours.  I definitely have never woken up in a pool of my own sweat from not having my caffeine. … **This stuff is a drug.  A serious drug.  And it's super freakin addictive**. *Extracts, powder, or in my case, capsules…it doesn't matter*.  Yes some forms are more addictive than others but the WD is hellacious no matter how you're taking it." (emphasis added).

About 10 months ago, another user wrote: "This stuff is a drug, and dangerous!  **I started taking it because of all the good things I heard and read about it**.  I've never been addicted to or dependent on anything before, but this stuff has totally taken control of my life." (emphasis added).

About 9 months ago, another user wrote: "I finally realized a few weeks ago how much of a negative impact kratom was having on my life.  I noticed myself planning my whole day around my doses and making sure

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

when I left the house I'd bring an extra dose with me in a shaker bottle. It was heavily affecting my mood overall, but especially in public settings. I did not want to leave my house most days even if I did dose."

About 9 months ago, another user wrote: "I have been taking OPMS black pills for about a year now. It has ran my bank dry. When I wake up in the morning I fucking crave this shit. I have never been addicted to opiates or anything like that. I get to the point where I am going to go cold turkey and am so confident but when I wake up my brain makes me think its okay to go get it. I cant talk to anyone about this in my family or friends. I have a very high stress job and am also going through a nasty break up. I feel so alone with trying to stop and when I betray myself and go to get more, i fight back tears in the parking lot (I am a grown ass man). I am not an emotional person and in my environment theres no room for emotions. Should I tapper off? What the fuck do I do?"

About 3 months ago, another user wrote: "I was taking one to two opms gold shots a day (sometimes three) for about two years straight. When the 24hr mark hit the withdrawals kicked in hard. I had become absolutely obsessed with scavenging 20$ togther to make sure I got my shot each day. Constantly driving to the shop, hoping no one would see me pop out. I wanted to quit every night but just couldn't stand the withdrawals. I finally quit (on day 17 ct) with the help of a quit buddy I found in this sub. I'm still not right at all, RLS is there and my sleep is still off. I'm sneezing more than I ever have. But, music is back, I have more money in my pocket and I feel free from the grips. I've still got a long ways to go but am committed to never touching that shit again. It brought out the worst version of me."

31.    This Internet forum is filled with accounts just like these. The stories are consistent – well-meaning people who were looking to feel better, in mind body and spirit, by taking an "herbal supplement," only to end up with an opioid-like addiction.

32.    As these accounts make clear, the addictive potential of kratom is a material fact to reasonable consumers which would help inform their purchase and consumption decisions. Defendant's Products have no warnings, whatsoever, that kratom is similar to an opioid, is habit-forming, and that regular use will result in opioid-like dependency with withdrawal symptoms similar to those of traditional opioids.

CLASS ACTION COMPLAINT - 12

1    33.    Consumers who knew the truth about kratom would not have purchased

2  Defendant's Products or would have paid less than they did for them.

3

4    **C.    Defendant Knew or Should Have Known it was Selling**
       **a Highly Addictive Drug to Unsuspecting Consumers**

5    34.    Despite its traditional medical uses, kratom dependence has been known

6  and observed for a long time and is well-documented in Southeast Asia, where the

7  plaint originates and has the longest history of use.  Addiction to kratom among users

8  in Thailand, Indonesia, and Malaysia has been documented by scientists and

9  researchers in the United States since at least 1988.

10    35.    To reiterate, this is not an instance where scientific merit is still up for

11 debate.  Western civilization has known for decades that kratom is highly addictive

12 and has the potential to cause physical and psychological dependence in regular

13 users.  In Southeast Asia, it has been known for over a century that kratom is

14 addictive.  For example, a 2007 study found that 2.3% of people in Thailand have

15 used kratom, and that many of those users developed a dependence on kratom to

16 avoid withdrawal.

17    36.    However, the fact that kratom's addictive potential has been known in

18 the *scientific community*, does not mean that the general public is aware of it.

19 Indeed, most consumers do not know what kratom is and have no idea how addictive

20 it is.

21    37.    Defendant operates under the brand name Mitra-9 and sells kratom

22 extract seltzers, shots, and powders.  But no matter what Product consumers take,

23 they are exposed to significant levels of addictive alkaloids.

24    38.    Upon information and belief, Defendant has interacted with growers and

25 distributors in Southeast Asia who have disclosed the addictive nature of kratom to

26 it.

27

28

CLASS ACTION COMPLAINT - 13

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

39.    Even without such interactions, Defendant has received numerous user reports about the addictive potential of kratom in the United States.

EXPERIENCE

# THE MITRA9
# DIFFERENCE

Mitra9 compliments active lifestyles every day with our unique, plant-based beverages. Our specially designed formula offers a delicious alternative to help you sail through your workday or support your post-workout routine. Mitra9 is here to harmonize with your daily rhythm and help you remain focused on your goals. Crafted with the finest ingredients, Mitra9 products are gluten-free, plant based, low in calories, and naturally flavored. We prioritize transparency in our process, providing lab tested results for our high-quality kratom and kava sourced responsibly. Savor the distinct taste of Mitra9 and buy online today.

40.    Therefore, Defendant knew or should have known that the Products it was selling were highly addictive.

41.    Despite this knowledge, Defendant failed to disclose the addictive potential of its Products on its website or anywhere on its Products' packaging.

42.    Instead, Defendant advertises its Products like they are some sport drink for health conscious individuals with "active lifestyles….".

CLASS ACTION COMPLAINT - 14

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

43.    Indeed, for its Blue Razz Kava Kratom Shot, Defendant markets the Product as if it were a harmless "pick-me-up" and packages the Product in a bottle that looks just like a 5-hour energy drink.

44.    By using phrases like "[f]orget ordinary supplement drinks this unique blend of kratom and kava is the perfect way to shake things up," Defendant downplays the seriousness of the drug it is selling to consumers and instead attempts to conjure an impression of kratom as an all-natural alternative to caffeine.  Such language is deceitful and harmful to consumers who rely on Defendant's Product statements when making their purchasing decisions.

45.    Indeed, the seltzers marketed specifically as being "non-alcoholic" are likely to entice consumers to purchase the Products who already are seeking to avoid the addictive tendencies that drinking can trigger.




CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

46.     There is no warning to consumers that the Products interact with opioid receptors, nor is there any warning that the Products are highly addictive and should not be taken on a daily basis.

47.     Further, the packaging itself is innocuous.  The light colors, pictures of leaves and fruit, and the constant representations of "good vibes" evoke a sense of lightness and connection to nature.  Nothing about this packaging would lead reasonable consumers to believe they were purchasing compounds similar to opioids, that act on the same mu-opioid receptors in the brain as opioids do.  Nor would the packaging lead reasonable consumers to presume that kratom is highly addictive.

48.     Addiction is a disease, a medical condition.  Thus, any product which carries an addiction risk poses a concurrent health hazard, which is a material fact to consumers.  Accordingly, Defendant's Products carry the threat of an unreasonable health hazard which Defendant was obliged to disclose to consumers on its Products' packaging.

49.     Further, those seeking to avoid alcoholism and other addictions may be drawn in by Defendant's statements about kratom without knowing that they risk trading one addiction for another.  Defendant has an obligation not only to remove such harmful statements from its website, but to warn consumers about the potential risks of taking kratom and to provide such a warning on the Product labels.

50.     The consequences of kratom addiction are not mild: "in humans, opioid-like withdrawal symptoms have been reported following cessation of kratom use," though "the withdrawal syndrome appears to be less severe than withdrawal from morphine."

51.     While kratom withdrawal may be "less severe" than morphine withdrawal, that is hardly a seal of approval – morphine withdrawal is one of the most unpleasant experiences that one can endure in modern life.  And kratom withdrawal, while perhaps "less severe" than morphine withdrawal, is still an

---

CLASS ACTION COMPLAINT - 16

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

"opioid-like withdrawal" (according to the World Health Organization), with the same physical and mental symptoms.

52.    The risk of "opioid-like withdrawal symptoms" is a material fact to reasonable consumers.

53.    As a kratom product manufacturer and distributor, Defendant occupied a position of superior knowledge to the average reasonable consumer, who likely knows next to nothing about kratom.

54.    Defendant, through its misleading advertising and its failure to disclose kratom's addictive properties on its Products' labels, relied upon the average consumer's incomplete knowledge of kratom to sell its Products and get users addicted to kratom.

55.    The very fact that Defendant possesses the capability to manufacture these Products shows that it understands the pharmacokinetic nature of kratom and the substantial risk of addiction that it poses to consumers.  Despite this, Defendant markets its Products as if they are nothing more than over-the-counter energy drinks or nootropic supplements.

56.    Defendant fails to disclose kratom's addictive potential because Defendant knows that it is a material fact to reasonable consumers which would influence their purchasing and consumption decisions, likely to Defendant's detriment.

57.    By any metric, Defendant's conduct is immoral, unethical, and contrary to Washington public policy.

58.    The United States is going through an opiate crisis that is shaking the foundations of our society.  Amid this crisis, Defendant is creating more addicts for no reason other than to line its pockets, without adequate disclosures of its Products' risks and through the use of false and misleading packaging.  That cannot – and

CLASS ACTION COMPLAINT - 17

should not – be allowed, at least when their conduct entails breaches of warranty and violation of state consumer protection statutes (as it does here).

## CLASS ALLEGATIONS

59.    ***Class Definition***.  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and all other similarly situated consumers, and seeks to represent a class (the "**Class**") defined as:

> All persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Mitra-9 kratom products.

60.    Plaintiff also seeks to represent a subclass of all Class members who purchased Defendant's Products in Washington, within the applicable statutory period (the "**Washington Subclass,**" collectively, together with the **Class**, the "**Classes**").

61.    Specifically excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

62.    Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

63.    ***Numerosity.***  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, the Classes comprise of at least thousands of consumers throughout Washington and the United States.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may

---

CLASS ACTION COMPLAINT - 18

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

64.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

a.     whether the labels on Defendant's Products have the capacity to mislead reasonable consumers;

b.     whether Defendant knew that kratom is a highly addictive substance;

c.     whether Defendant had a duty to inform consumers about the risks inherent to consumption of its Products;

d.     whether Defendant's conduct alleged herein violated the Washington Consumer Protection Act: RCW 19.86;

e.     whether Defendant's conduct alleged herein constitutes unjust enrichment;

f.     whether Defendant's conduct constitutes negligent omission;

g.     whether Plaintiff and the Class are entitled to damages and/or restitution; and

h.     whether Plaintiff and the Class are entitled to attorneys' fees and costs.

65.     ***Typicality.***  Plaintiff's claims are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Products are highly addictive and operate similarly to opioids.

66.     ***Adequacy***.  Plaintiff will fairly and adequately protect Class members' interests.  Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

CLASS ACTION COMPLAINT - 19

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

67.    ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

68.    Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

69.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

70.    Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I

**Violation of the Washington Consumer Protection Act: RCW Chapter 19.86**

71.    Plaintiff incorporates each and every factual allegation set forth above.

72.    Plaintiff brings this cause of action on behalf of himself and members of the Washington Sub Class.

73.    Defendant has violated the Washington Consumer Protection Act (CPA), RCW Chapter 19.86.

74.    Section 19.86.020 of the CPA states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  RCW § 19.86.020.

75.    Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee.  A private

CLASS ACTION COMPLAINT - 20

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

1    plaintiff may be eligible for treble damages." Washington Pattern Jury Instruction

2    Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations

3    omitted); RCW § 19.86.090.

4        76.    Defendant engages in the conduct of trade or commerce within the

5    meaning of the CPA. Defendant does this by selling kratom products in a manner

6    that directly and indirectly affects people of the state of Washington.

7        77.    As alleged more fully above, Defendant made and disseminated untrue

8    and misleading statements of facts in its advertisements and on its Products'

9    packaging to class members, constituting acts of unfair methods of competition

10   and/or unfair or deceptive acts or practices.

11       Unfair Acts or Practices

12       78.    As alleged in detail above, Defendant committed "unfair" acts by failing

13   to inform consumers that its Products were addictive. This caused Plaintiff and the

14   class to make purchases they otherwise would not have made and deprived them of

15   their expectancy interest in receiving the Products as advertised.

16       79.    The harm to Plaintiff and the class greatly outweighs the public utility

17   of Defendant's conduct. There is no public utility to misrepresenting the

18   addictiveness of a consumer product. Plaintiff and the sub-class's injury was not

19   outweighed by any countervailing benefits to consumers or competition. Misleading

20   consumer products only harm consumers.

21       Deceptive Acts or Practices

22       80.    As alleged in detail above, Defendant's representations that its Products

23   are not addictive were false and misleading.

24       81.    Defendant's representations were likely to deceive, and did deceive,

25   Plaintiff and other reasonable consumers. Defendant knew, or should have known

26   through the exercise of reasonable care, that these statements were inaccurate and

27   misleading.

28

---

CLASS ACTION COMPLAINT - 21

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

* * *

82.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Product. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

83.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

84.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.

85.     Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the Products if they had known the truth.

86.     Defendant's acts or omissions are injurious to the public interest because these practices were committed in the course of Defendant's business and were committed repeatedly before and after Plaintiff purchased Defendant's Products. They are part of a pattern of unfair and deceptive advertisements. These actions have injured other persons, and, if continued, have the capacity to injure additional persons.

## COUNT II

### Breach of Implied Warranty

87.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

88.     Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

89.     This claim is brought pursuant to the laws of the State of Washington.

CLASS ACTION COMPLAINT - 22

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

90.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that that kratom is not addictive and does not cause opioid-like withdrawal symptoms.

91.    Defendant breached this warranty implied in the contract for the sale of its kratom Products because the Products could not pass without objection in the trade under the contract description: the kratom Products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and members of the Classes, and the Products do not conform to the implied affirmations of fact made on the marketing and packaging for the Products that the Products are not addictive and do not cause withdrawals.  U.C.C. §§ 2-313(2)(a), (e), (f).  As a result, Plaintiff and members of the Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

92.    Plaintiff and members of the Classes purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

93.    The kratom Products were defective when they left the exclusive control of Defendant.

94.    Plaintiff and members of the Classes did not receive the goods as warranted.

95.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Classes have been injured and harmed because (a) they would not have purchased the Products on the same terms if they knew that the Products were addictive and could cause opioid-like withdrawal symptoms; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

96.    On May 19, 2025, prior to filing this action, Defendant was mailed a pre-suit notice letters on behalf of Plaintiff that complied in all respects with U.C.C.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

§§ 2-314 and 2-607.  Plaintiff's counsel sent Defendant a letter advising Defendant that it breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

## COUNT III

### Unjust Enrichment

97.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

98.    Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

99.    Plaintiff and the members of the Classes conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

100.    Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the members of the Classes.

101.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were addictive and similar to opioids.  This caused injuries to Plaintiff and members of the Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

102.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the members of the Classes.

103.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

CLASS ACTION COMPLAINT - 24

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

104.    Plaintiff and the members of the Classes are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

105.    As a direct and proximate result of Defendant's actions, Plaintiff and the members of the Classes have suffered in an amount to be proven at trial.

106.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which he is entitled.

107.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiff is in the same place he would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at his disposal.

## COUNT IV

### Fraud by Omission

108.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

109.    Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

110.    Defendant distributed its Products throughout the State of Washington.

111.    Defendant misrepresented that its kratom Products have attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

CLASS ACTION COMPLAINT - 25

112.    Defendant knows that kratom is addictive because it interacts with kratom vendors, has been made aware of user reports, and has fully characterized kratom's alkaloids and created advanced extraction methods.

113.    Defendant knows that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers.

114.    The average reasonable consumer in the kratom purchasing context does not know that kratom is addictive and cannot reasonably access that information.

115.    Defendant therefore had a duty to Plaintiff and the members of the Classes to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

116.    Consumers reasonably and justifiably relied on Defendant's omission because it is reasonable to assume that a product which is addictive like an opioid would bear some kind of a warning.

117.    As a result of Defendant's omission, Plaintiff and the members of the Classes paid for kratom Products they may not have purchased, or paid more for those Products than they would have had they known the truth about kratom

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed class the following relief against Defendant:

a.    For an order certifying the Classes and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

CLASS ACTION COMPLAINT - 26

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues so triable.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027

Dated: July 14, 2025

Respectfully submitted,

By:  /s/ Wright A. Noel
      One of Plaintiffs' Attorneys

**CARSON NOEL PLLC**
Wright A. Noel
wright@carsonnoel.com
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: 425.395.7786
Fax: 425.837.5396


**BURSOR & FISHER, P.A.**
Ryan Brooks Martin*
Neal J. Deckant*
Luke Sironski-White*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: rmartin@bursor.com
            ndeckant@bursor.com
            lsironski@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*